**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 12-265** |
| **ROBERT KALUZA AND DONALD VIDRINE** | **SECTION "K"(5)** |

**ORDER AND REASONS**

Before the Court is defendants' Joint Motion to Dismiss Counts 1-23 of the Superseding Indictment filed on September 26, 2013. (Rec. Doc. 104). Having reviewed the pleadings, memoranda, and relevant law, the Court hereby DENIES the motions as follows.

## I. BACKGROUND

The charges in this matter arise out of the actions of two employees of British Petroleum ("BP") who were on board the *Deepwater Horizon* drilling vessel during the explosion on April 20, 2010, which killed eleven members of the vessel's crew. On November 14, 2012, a federal grand jury in the Eastern District of Louisiana returned a Superseding Indictment ("the Indictment") charging each of the employee-defendants, Robert Kaluza and Donald Vidrine ("defendants"), with eleven counts of Involuntary Manslaughter under 18 U.S.C. § 1112 ("Section 1112") (Counts 1-11), eleven counts of Ship Officers' Manslaughter under 18 U.S.C. § 1115 ("Section 1115") (Counts 12-22), and one count alleging a Clean Water Act violation under 33 U.S.C. §§ 1319(c)(1)(A) and 1321(b)(3) (Count 23). (Superseding Indictment ¶¶ 25-70). On November 28, 2012, both defendants plead not guilty as to all counts. On December 10, 2013, this Court dismissed Counts 12-22 under Section 1115. (*See* Rec. Doc. 118).

In their instant motion, the defendants seek to dismiss Counts 1-23 of the Indictment under Federal Rule of Criminal Procedure 12(b)(2), asserting that the underlying criminal statutes are unconstitutionally vague as applied "because they lack a clear 'standard of care' that the defendants allegedly violated" and thus fail to charge an offense. (Rec. Doc. 104, at 1). As previously noted, the remaining counts against the defendants are charged under Section 1112 (Counts 1-15) and the Clean Water Act (Count 23). The government, on the other hand, suggests that the statutes at issue in this matter employ "well-established" and unambiguous standards of negligence. (Rec. Doc. 111, at 1). Thus, the government argues that because the standard of negligence is not ambiguous or vague, the criminal statutes as applied to the defendants in this case are not void for vagueness. (Rec. Doc. 111, at 1).

## II. LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." The court is required to take the indictment's allegations as true when determining whether the indictment fails to state an offense. *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 199); *United States v. Rainey*, 946 F.Supp.2d 518, 526 (E.D. La. May 20, 2013). In addition, in considering whether to grant the motion to dismiss the indictment based on its sufficiency for failure to state an offense, "the propriety of granting a motion to dismiss the indictment under Rule 12 'is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact.'" *United States v. Rainey*, 946 F.Supp.2d at 526 (citing *United States v. Flores*, 404 F.3d 320, 324 (5th Cir.2005)). In the Fifth Circuit, questions of law are considered appropriate for such pretrial motions. *Id.* In

the instant matter, whether the criminal statutes are unconstitutionally vague as applied to the defendants is a question of law. *United States v. Rudzavice*, 586 F.3d 310, 315 (5th Cir. 2009) ("Whether a criminal statute is unconstitutionally vague is a question of law…"); *see Rainey,* 946 F.Supp.2d at 546; *United States v. Humble* 714 F.Supp. 794 (E.D.La. June 15, 1989). Additionally, unlike some other circuits, the Fifth Circuit allows district courts to look beyond the face of the indictment and make "preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Flores*, 404 F.3d at 324 n.6 (citation and internal quotations omitted); *see Rainey*, 946 F.Supp.2d at 546.

## III. ANALYSIS

Neither party contests what the government must prove under either statute.[1] As to the manslaughter charges, Section 1112 provides:

> (a) Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:
> Voluntary—Upon a sudden quarrel or heat of passion.
> *Involuntary—In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.*

18 U.S.C. § 1112(a) (emphasis added). Courts have interpreted charges of involuntary manslaughter under Section 1112 to require proof that the defendant committed the following acts:

> (1) act[ed] with gross negligence, meaning a wanton or reckless disregard for human life, and (2) [had] knowledge that his or her conduct was a threat to the life of another or knowledge of such circumstances as could

[1] "We agree that in most circumstances the line between negligent and non-negligent conduct is sufficiently clear to satisfy due process." (Defendant's Reply to Opposition, Rec. Doc. 114, at 2).

> reasonably have enabled the defendant to foresee the peril to which his or her act might subject another.

*United States v. Fesler*, 781 F.2d 384, 393 (5th Cir. 1986); *see also United States v. Schmidt*, 626 F.2d 616, 617 (8th Cir. 1980), *cert. denied*, 449 U.S. 904, 101 S.Ct. 278, 66 L.Ed.2d 136; *United States v. Wood*, 207 F.3d 1222, 1236 (10th Cir. 2000). The Fifth Circuit has interpreted "gross negligence" in the context of Section 1112 to mean "a wanton or reckless disregard for human life." *Fesler*, 781 F.2d at 393; *United States v. Dominguez-Ochoa*, 386 F.3d 639, 645 (5th Cir. 2004). For charges under the Clean Water Act, 33 U.S.C. § 1319(c)(1)(A) and § 1321(b)(3), however, courts only require proof of ordinary negligence. *United States v. Pruett*, 681 F.3d 232, 241-42 (5th Cir. 2012). In *Pruett*, the Fifth Circuit stated that "negligence is not an ambiguous term, and is understood to mean '[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation.'" 681 F.3d 232, 242 (5th Cir. 2012) (citation omitted). Thus, the Court must consider whether gross negligence and negligence as applied to the defendants results in impermissible and unconstitutional vagueness as to the conduct proscribed by the statutes.

"The Fifth Amendment's Due Process Clause protects against criminal convictions based on impermissibly vague statutes." *United States v. McRae*, 702 F.3d 806, 836-37 (5th Cir. 2012) *cert. denied*, 133 S. Ct. 2037, 185 L. Ed. 2d 887 (U.S. 2013). Generally, the void for vagueness doctrine provides that the statute may be vague based on two independent grounds: (1) where persons of ordinary intelligence have no fair notice or reasonable opportunity to understand what conduct is proscribed, and (2) where the statute prohibits conduct in such a manner that it encourages arbitrary and discriminatory enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed. 903 (1983); *United States v. Williams*, 553 U.S. 285, 304, 128 S.Ct. 1830, 1845, 170 L.Ed.2d 650 (2008); *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct.

2294, 33 L.Ed.2d 222 (1972). The first ground is founded upon the notion that "[v]ague laws may trap the innocent by not providing fair warning." *Grayned*, 408 U.S. at 108-09; *see Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2007). Even if the law provides fair notice, however, it may be impermissibly vague if it does not provide sufficiently clear standards for enforcement. *See Chicago v. Morales*, 527 U.S. 41, 52, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999). The second ground—of which the Supreme Court has declared is the "more important aspect of the vagueness doctrine"—requires that laws must establish "minimal guidelines to govern law enforcement." *Koldender*, 461 U.S. at 359. To protect against arbitrary enforcement, the laws must establish "explicit standards" that avoid "resolution based on an *ad hoc* and subjective basis," or those resolutions which are accompanied by the "attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 109.

As the Supreme Court has instructed, "[t]hese standards should not, of course, be mechanically applied." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 498-99, 102 S. Ct. 1186, 1193, 71 L. Ed. 2d 362 (1982); *see Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551-52 (5th Cir. 2008). The degree of vagueness tolerated depends partly on the nature of the law: economic regulation or civil enactments receive more tolerance than criminal penalties because the "consequences of imprecision are qualitatively less severe." *Hoffman*, 455 U.S. at 498-99. Yet a scienter requirement in a criminal statute may mitigate vagueness, particularly as to the fair notice requirement. *Id.* Indeed, "even a criminal statute need not achieve 'meticulous specificity' at the expense of 'flexibility and reasonable breadth.'" *Rubin v. Garvin*, 544 F.3d 461, 467 (2d Cir. 2008) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). As the Supreme Court has explained:

> What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact

> it establishes has been proved; but rather the indeterminacy of precisely what that fact is. Thus, we have struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or *settled legal meanings*.

*United States v. Williams*, 553 U.S. 285, 306, 128 S.Ct. 1830, 1846, 170 L. Ed. 2d 650 (2008) (citations omitted) (emphasis added).

Challenges as to vagueness are of two types: they may be facial, seeking invalidation of the statute in its entirety, or as applied, seeking invalidation only as applied to the facts *sub judice*. *See Steffel v. Thompson*, 415 U.S. 452, 474, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Generally, "[i]t is well established that vagueness challenges to statues which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand," or an as applied challenge. *United States v. Mazurie*, 419 U.S. 544, 553, 95 S.Ct. 710, 715-16, 42 L.Ed.2d. 706 (1975); *see United States v. Clark,* 582 F.3d 607, 612-13 (5th Cir. 2009).

The statute may be vague as applied if the defendants show that they could not have reasonably understood that their alleged conduct or behavior was proscribed by the statute. *See United States v. Kelly,* 973 F.2d 1145, 1152 (5th Cir. 1992); *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S. Ct. 1853, 1857, 100 L. Ed. 2d 372 (1988) ("Objections to vagueness . . . may be overcome in any specific case where reasonable persons would know that their conduct is at risk."). The challenge may also succeed where the statute is so standardless as to provide no notice and no guidance to law enforcement. *See Palmer v. City of Euclid, Ohio,* 402 U.S. 544, 545-46, 91 S.Ct. 1563, 1564, 29 L.Ed.2d 98 (1971) (finding that an ordinance prohibiting suspicious persons from wandering about the streets without visible or lawful business failed to give notice to the defendant); *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S. Ct. 1686, 1688, 29 L. Ed. 2d 214 (1971). For example, the Court found that the constitutional right to

assembly was impinged by a vague and unascertainable standard where the ordinance prohibited three or more persons to assemble on sidewalks conducting themselves in an "annoying" manner to police officers: "Conduct that annoys some people does not annoy others [; t]hus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates*, 402 U.S. at 614.

Courts reviewing vagueness challenges at the appellate level generally apply the facts as proved at trial to determine whether the particular enactment is vague as applied. *See, e.g.*, *Clark*, 582 F.3d at 614; *United States v. Kelly*, 973 F.2d 1145, 1152 (5th Cir. 1992); *United States v. McRae*, 702 F.3d 806, 838 (5th Cir. 2012) *cert. denied*, 133 S. Ct. 2037, 185 L. Ed. 2d 887 (U.S. 2013). Because of the pre-trial nature of this motion, the government asserts that any challenge raised in this motion must apply strictly to the allegations contained in the indictment and that the Court should not consider the defendants' motion's accompanying exhibits and evidence; the government also notes that other courts have post-poned decision on similar motions until it can be decided on evidence admitted at trial. (Rec. Doc. 111, at 12). This is supported by district court decisions in other circuits as well as circuit court opinions reversing district courts for considering vagueness challenges before trial. *See, e.g., United States v. Reed*, 114 F.3d 1067, 1070 (10th Cir. 1997) (district court erred by considering vagueness in a pretrial motion); *United States v. Tafoya*, 375 F.Supp.2d 1257 (D. New Mexico July 7, 2005) (denying vagueness challenge because as-applied challenge required factual determinations to be made by the jury and government did not consent to consideration of facts not alleged in the indictment); *United States v. Harris*, 2012 WL 2402788, at 1 (D.Mass. June 26, 2012) ("[T]he court considered the argument that the wire fraud statute was unconstitutionally vague, but found that

this contention would need to be decided in the context of the evidence presented at trial."); *United States v. Moesser*, 2010 WL 4811945 (D.Utah 2010) ("[I]t is clear that the Court may not rule on an as-applied vagueness challenge until after factual determinations are made at trial if such determinations may be of any use to the Court's decision making process"); *United States v. Bastian*, 112 F.Supp.2d 378, 380 (S.D.N.Y.) (denying vagueness challenge without prejudice to renew motion at close of the government's case at trial).

However, district courts in the Fifth Circuit have ruled on similar motions challenging vagueness before trial. *See United States v. Humble,* 714 F.Supp. 794 (E.D.La. June 15, 1989) (finding 18 U.S.C. § 215 was not unconstitutionally vague as applied against defendant); *Rainey*, 946 F.Supp.2d 518 (discussing as-applied vagueness challenge without deciding the issue as earlier motion rendered the challenge moot). These decisions are distinguishable from other circuits based on the Fifth Circuit rule that district courts are allowed to look beyond the four corners of the indictment in finding facts relevant to determining a question of law presented in a motion filed pursuant Rule 12(b)(2) of the Federal Rules of Criminal Procedure. *See Flores,* 404 F.3d 320, 324 (5th Cir.2005). Further, as one court has stated, the standard in vagueness challenges is an objective one: "Courts ask 'whether the law presents an ordinary person with sufficient notice of or the opportunity to understand what conduct is prohibited or proscribed,' not whether a particular plaintiff actually received a warning that alerted him or her to the danger of being held to account for the behavior in question." *Dickerson v. Napolitano,* 604 F.3d 732, 745-46 (2d Cir. 2010). Under *Flores*, without having proved the facts alleged in the indictment, and accepting them as true, this Court may determine whether an ordinary person would have sufficient notice of whether the conduct alleged is proscribed.

The defendants' challenge questions whether there is an applicable standard of care to be applied in the negligence analyses under both Section 1112 and the Clean Water Act 1319(c)(1)(A) and 1321(b)(3). The defendants allege that no such standard existed at the time of the blowout or, at the least, that any standard promulgated in guidelines by BP provided little to no ascertainable standard. The defendants assume that, in order to be negligent or grossly negligent, an external standard of care must exist. While professional malpractice claims often rely on exactly this type of standard—typically established by expert testimony—this is not such a case. Nor is it the case that this matter relies on administrative regulations, which often provide a standard of care or may even be considered, for example, in a negligence per se type of analysis.[2] Instead, the statutes at hand are criminal statutes with criminal penalties that employ standards of ordinary negligence or gross negligence. The statutes at issue in this matter have been interpreted to require ordinary negligence and gross negligence, which have well-settled legal meanings: indeed, "[t]his ubiquitous standard [of negligence] does not defy common understanding but relies on it." *United States v. Escalante*, 239 F.3d 678, 680 (5th Cir. 2001). And it is this Court's opinion that the standard of care need not derive from a specific industry standard.[3]

The defendants have presented no case law (and the Court does not know of any existing case law) where a defendant regarded as a professional was treated differently under the negligence analysis in an involuntary manslaughter charge under Section 1112.[4] To find

---

[2] *Schlichter v. Port Arthur Towing Co.*, 288 F.2d 801, 804 (5th Cir. 1961) ("Similarly, governmental regulations do not necessarily measure the scope of duty. Occasionally they reflect merely a minimum so that noncompliance leads to imposition of civil responsibility almost as a matter of course.")

[3] *See United States v. Escamilla*, 467 F.2d 341, 347-48 (4th Cir. 1972) (finding that the lack of governing authority, police force, and relative lack of civilization of T-3, an unclaimed island of ice in the Arctic Ocean were relevant factors to be considered by the jury in determining whether defendant was grossly negligent under United States' law).

[4] For example, the Tenth Circuit in *United States v. Wood* reviewed a verdict as to a physician convicted of involuntary manslaughter. *United States v. Wood*, 207 F.3d 1222, 1230 (10th Cir. 2000). The government

otherwise would mean that, absent an external standard of care, no "professional" could be held accountable for such conduct. *Cf. United States v. McMillan*, 820 F.2d 251, 254 (8th Cir. 1987) (finding state statute applicable to establish underlying unlawful act in federal involuntary manslaughter case as consequence would be contrary to case law and language of manslaughter statute). By the same reasoning, a defendant could avoid prosecution under the Clean Water Act sections 1319(c)(1)(A) and 1321(b)(3). Therefore, any external standard guiding the negligence analysis, if any exists, may be presented as evidence to be taken into consideration by the jury.

In considering the first ground for vagueness, the question is whether an ordinary person in the defendants' positions, provided the facts alleged in the indictment are proved at trial, would have sufficient notice that negligent conduct resulting in death would be sanctioned or would result in environmental harm. Taking the facts as alleged in the indictment as true, it is difficult to find that any person would not be apprised that general negligent conduct, much less grossly negligent conduct, in this matter would not be sanctioned. As alleged in the indictment, deepwater drilling is by nature a dangerous undertaking, fraught with the risk of introduction gases and fluids that may enter the well and cause explosions on board the deepwater drilling rig. (Rec. Doc. 7, at 2-3). The indictment alleges that the defendants failed to properly administer "negative testing" meant to contain any risk of such gases and fluids entering the well and failed to contact engineers onshore to report an abnormal reading from the negative testing. (Rec. Doc. 7, at 7). Provided that the government is able to prove that the defendants' actions caused the blowout that caused the eleven deaths on the *Deepwater Horizon*, the facts as alleged are sufficient to conclude that an ordinary person would reasonably understand that the improper administration of the negative testing and actions surrounding such administration of the test in

---

presented evidence through expert witnesses of the proper dosage of potassium and potential lethal effects. *Id.* The jury deliberated based on the evidence presented at trial regarding the physician's conduct.

light of the inherent danger in deepwater drilling would subject one to criminal sanctions. That the defendants did not foresee any criminal charges being brought against them does not undermine the fair notice requirement. Though a criminal may not foresee certain consequences, the law may still hold him or her accountable for negligent actions. *See Clark*, 582 F.3d 607, 614 (5th Cir. 2009) (finding that statute was not unconstitutionally vague despite defendant's claiming not to have known that transporting a woman into virtual sex slavery was an "immoral purpose"). Justice Holmes aptly explains this point:

> If a man should kill another by driving an automobile furiously into a crowd, he might be convicted of murder, however little he expected the result. If he did no more than drive negligently through a street, he might get off with manslaughter or less. And in the last case he might be held although he himself thought that he was acting as a prudent man should.

*Nash v. United States*, 229 U.S. 373, 377-78 (1913). Thus, assuming that the facts as alleged in the indictment are true, the Court finds that an ordinary person would understand that the defendants' conduct was proscribed in this matter.

Considering the second ground of vagueness, negligent and grossly negligent conduct provide a clear standard for enforcement. The Fifth Circuit in *Escalante* stated unambiguously that, in that case, "[b]ecause [the statute] applies only to conduct that is negligent, such that the conduct endangers the motorist or others, the Mississippi law does not empower the police to punish whatever conduct they choose." 239 F.3d at 680. Similarly, both statutes at issue in this matter apply only to negligent or grossly negligent conduct, effectively cabining the discretion of law enforcement and juries from arbitrary enforcement. Moreover, the question of whether the conduct was reasonable in a negligence analysis, a well-settled legal standard, is unquestionably appropriate for the jury's consideration: "[t]he mere fact that a penal statute is so framed as to require a jury upon occasion to determine a question of reasonableness is not sufficient to make

it too vague to afford a practical guide to permissible conduct." *United States v. Ragen*, 314 U.S. 513, 523, 62 U.S. 513, 62 L.Ed. 374 (1942); *see also United States v. Scannapieco*, 611 F.2d 619 (5th Cir. 1980) (jury instructions surviving vague as applied challenge).

## IV. CONCLUSION

In sum, this Court finds that consideration of this motion is appropriate in a pretrial context because it relies only on those facts as alleged in the indictment. Further, the Court finds that the standards of negligence and gross negligence as applied to the facts of the instant matter as alleged in the indictment are not unconstitutionally vague.

Accordingly,

**IT IS ORDERED** that the defendants Joint Motion to Dismiss Counts 1-23 (Rec. Doc. 104) is hereby **DENIED**.

New Orleans, Louisiana, this 27th day of January, 2014.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**