IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Case No. 2:12-cr-00265 |
| ROBERT KALUZA | * | |
| | * * * | |

**RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF DEATHS**

The government respectfully opposes defendant's motion (Rec. Doc. No. 285) for an order precluding the government from entering into evidence the deaths of those killed in the *Deepwater Horizon* disaster. While the government has no intention of belaboring the point, the fact of their deaths is necessary for the government to present a complete picture of the facts to the jury and to prevent the jury from making incorrect assumptions about why certain witnesses will not testify.

**BACKGROUND**

Defendant Robert Kaluza is facing trial on one count of negligent discharge under the Clean Water Act ("CWA"), in violation of 33 U.S.C. §§ 1319(C)(1)(A) and 1321(b)(3), for his central role in the April 20, 2010, blowout of oil and natural gas onboard the *Deepwater Horizon*. (Rec. Doc. No. 3 at 20). Eleven men died in the resulting explosions and fires aboard the *Deepwater Horizon*, and massive quantities of oil were discharged into the Gulf of Mexico, reaching across hundreds of miles of beaches and coastline of the Gulf States of Louisiana, Mississippi, Alabama, and Florida. (*Id*. at 7-8).

On April 20, 2010, the defendant was a designated well site leader onboard the *Deepwater Horizon*. (Rec. Doc. No. 3 at 2-3). In this role, the defendant was responsible for,

1

among other things, ensuring that well drilling operations were performed safely "in light of the intrinsic danger and complexity of deepwater drilling." (*Id*. at 3). Specifically, the defendant was to perform "negative pressure testing" to identify whether cement poured to the bottom of the well "formed an effective barrier between the well and the oil and natural gas reservoir." (*Id*. at 5). If the cement did not form an effective barrier, then oil and natural gas could flow up the well. (*Id*. at 4). During a negative pressure test, "any pressure increase of fluid flow was an indication that the well was not secure and that oil and natural gas could be entering the well." (*Id*. at 5).

The defendant had "ultimate authority on the rig to determine whether the negative testing was successful." (Rec. Doc. No. 3 at 6). During the negative pressure testing that occurred on April 20, 2010, the defendant became aware of several indications that the well was not secure. (*Ibid*.) Instead of contacting engineers onshore to alert them to the problem, the defendant accepted "an explanation from one or more members of the rig crew attributing the drill pipe pressure to an alleged 'bladder effect.'" (*Ibid*.) "This explanation was scientifically illogical and was not recognized within the deepwater oil exploration industry." (*Ibid*.) The defendant "nevertheless accepted the explanation." (*Ibid*.)

The defendant's acceptance of a "nonsensical explanation for the abnormal readings" (Rec. Doc. No. 3 at 7) is a key fact the government will prove to show that the defendant acted negligently, and that his negligent conduct was a proximate cause of the oil discharge, 33 U.S.C. §§ 1319(c)(1)(A), 1321(b)(3); *United States v. Pruett*, 681 F.3d 232, 242-43 (5th Cir. 2012). The government will call witnesses to explain to the jury how the defendant came to accept the "bladder effect" theory. These witnesses will describe that Jason Anderson, Stephen Curtis, and Dewey Revette were present during the rig crew's conversation about the "bladder effect," and at

2

least some of the witnesses will suggest that the bladder effect discussion was initiated by at least one of these gentlemen and was participated in by all of them. Indeed, the government suspects the defendant's own counsel may argue that one or more of these gentlemen were the genesis of the bladder effect theory that night. Because Mr. Anderson, Mr. Curtis, and Mr. Revette were killed in the explosion (Rec. Doc. No. 3 at 6-7), the jury will not hear from these witnesses. Without the explanation of their deaths, the jury may draw inaccurate inferences about why certain key witnesses are not testifying.

## **LEGAL STANDARD**

Federal Rule of Evidence 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. But to warrant exclusion under Rule 403, the danger of unfair prejudice "must *substantially* outweigh the probative value of the evidence." *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007) (emphasis in original). "The scope of Rule 403 is narrow . . . [b]ecause virtually all evidence is prejudicial," *United States v. El-Mezain*, 664 F.3d 467, 508 (5th Cir. 2011), *as revised* (Dec. 27, 2011), and "district courts should exclude evidence under Rule 403 in very few circumstances," *United States v. Curtis,* 635 F.3d 704, 716 (5th Cir. 2011). The Fifth Circuit has instructed that "the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Pace,* 10 F.3d 1106, 1116 (5th Cir. 1993). "[T]he Federal Rules of Evidence embody a strong and undeniable preference in favor of admitting probative evidence." *United States v. Curtis*, 635 F.3d at 717 (quotation marks omitted).

The Fifth Circuit has repeatedly held that evidence is properly admitted under Rules 401 and 403 when it is aids the jury's understanding of the government's presentation of evidence,

3

and when it is used to rebut a defendant's theory of innocence. *See, e.g.*, *United States v. El-Mezain*, 664 F.3d at 509 (evidence necessary for "context and explanation" is not unfairly prejudicial and "evidence which tends to rebut a defendant's claim of innocent action" is not unfairly prejudicial); *United States v. Fields*, 483 F.3d at 355 (prejudicial evidence properly admitted when it provides background to understand witness testimony and rebut defendant's theory of innocence).

## ARGUMENT

The defendant misstates the law in contending that the evidence of deaths is not relevant under Federal Rule of Evidence 401. (Rec. Doc. No. 285-1 at 1-2). He is also mistaken that, under Federal Rule of Evidence 403, the risk of unfair prejudice outweighs any probative value. (Rec. Doc. No. 285-1 at 2-3). Here, as is entirely appropriate under Fifth Circuit law, the evidence of the deaths should be admitted because it explains missing testimony in the government's case and completes the background of the case. The evidence also should be admitted to address, again for completeness, any defense argument or inference that these gentlemen were responsible for the "bladder effect" discussion.
http://www.mdl2179trialdocs.com/releases/release201501211000002/TREX-242689.pdf

   *a. The Evidence of Deaths is Admissible Under Rule 403 Because it Explains Why Evidence is Missing and Provides a Background of the Case*

The evidence of deaths is admissible to give the jury a background understanding of the government's case and to explain why certain central witnesses are not testifying. As the Supreme Court explained in *Old Chief v. United States*, the Government faces "a need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be," and because the Government bears the burden of proof, it "may prudently demur at a

4

defense request to interrupt the flow of evidence telling the story in the usual way." 519 U.S. 172, 188-89 (1997).

Here, the government must explain to the jury why it is unable to present certain witnesses that the jury would otherwise expect. *See United States v. Spletzer,* 535 F.2d 950, 956 (5th Cir. 1976) (prosecutorial need alone does not mean probative value outweighs prejudice, but the more essential the evidence, the more probative its value, and the less likely that a trial court should exclude it).

The Fifth Circuit has repeatedly held that it is not unfairly prejudicial for the government to introduce evidence that explains why its case is missing evidence the jury might normally expect. In *United States v. Thevis*, the Fifth Circuit held that evidence of a witness's participation in the witness protection program, while highly prejudicial, was properly admitted because it explained to the jury why the government had been unable to depose the witness before the witness died. 665 F.2d 616, 637 (5th Cir. 1982), *overruled on other grounds*, *United States v. Nelson*, 242 F. App'x 164, 171 (5th Cir. 2007). Likewise, in *United States v. Fields*, the Fifth Circuit concluded that gruesome photos of the victim's decomposed body "were highly probative" because they explained why the government had "little physical evidence." 483 F.3d at 355. In *United States v. Collins*, the Fifth Circuit again held that inflammatory images of the victim's decapitated and decaying body were not unfairly prejudicial because they showed the jury why the government had little physical evidence and helped the jury understand why the government's medical examiner could not determine the cause of death. 368 F. App'x 517, 521 (5th Cir. 2010).

The Fifth Circuit has also held that evidence is admissible under Rule 403 when it provides a background for the jury to better understand the case. In *United States v. El-Mezain*,

5

the defendants "were not charged with planning or carrying out terrorist activity," but the government introduced evidence of Hamas violence. 664 F.3d at 509. In rejecting the defendant's argument that this was unfairly prejudicial, the Fifth Circuit held that the evidence, although prejudicial, "served the probative purpose of providing context and explanation in the case." *Ibid.*; *see also United States v. Warren*, 37 F. App'x 88 (5th Cir. 2002) (evidence that the defendant was arrested in a high-crime area was not unfairly prejudicial because it was necessary background for the jury to understand the police presence and conduct); *United States v. Barnes*, 254 F. App'x 293, 298 (5th Cir. 2007) (testimony of defendant's prior convictions was not unfairly prejudicial because it gave the jury a context to understand the need for a SWAT entry into the defendant's home).

It is simply inextricable that when the rig exploded, people were injured and died. It is an inescapable part of the background of the critical evening, and it is ingrained in the trauma that is still being felt by witnesses on both the government and defense rosters. The fact of the deaths may even be a necessary part of some witnesses' testimony to explain difficulty in discussing the events. The presentation of the critical events would be artificial and "interrupt the flow of evidence telling the story in the usual way" if the fact of the deaths were to be excluded. *Old Chief v. United States*, 519 U.S. at 188-89

> b. *The Evidence of Deaths is Admissible Under Rule 403 Because it Tends to Rebut a Theory of Defense*

In this case, when the jury is evaluating the credibility of the witnesses and considering the weight and effect of all evidence that has been produced, the jury may believe that the government's presentation of evidence is conspicuously incomplete because Mr. Anderson, Mr. Curtis, and Mr. Revette did not testify. Moreover, in explaining to the jury how he and the rig crew came to accept the "bladder effect" explanation, the defendant may – through argument or

6

testimony – attempt to shift culpability to other members of the rig crew – most particularly Mr. Anderson. Should he do so, the jury will necessarily wonder why it is not hearing a response from any of those individuals. The defendant cannot, on the one hand, benefit from the conspicuous absence of three key witnesses, while, on the other hand, prevent the explanation of those absences because it is unfavorable to him. *See United States v. Touloumis,* 771 F.2d 235, 241 (7th Cir. 1985) ("[A] party cannot be permitted on the one hand to introduce evidence that appears favorable to his argument and then complain, after the circumstances are fully developed, because the evidence becomes detrimental to his cause.").

The Fifth Circuit has repeatedly concluded that prejudicial evidence is admissible under Rule 403 when it rebuts a defendant's theory of innocence. *United States v. El-Mezain*, 664 F.3d at 509; *United States v. Fields*, 483 F.3d at 355; *see also United States v. Vaquero*, 997 F.2d 78, 87 (5th Cir. 1993) ("The court did not abuse its discretion [under Rule 403] in admitting evidence of [defendant's] prior possession of cocaine in Florida because it rebuts [defendant's] contention that he lacked the *mens rea* to deal drugs."); *United States v. Chapa*, 609 F. App'x 264 (5th Cir. 2015) (evidence admissible under Rule 403 to rebut defendant's claim of innocent action); *United States v. Duncan,* 919 F.2d 981, 987–88 (5th Cir. 1990) (in prosecution for mail fraud, testimony of forged signature on disability statement tended to rebut the claim that defendants had innocently filed insurance claims for genuine medical reasons, and was not unduly prejudicial).

## CONCLUSION

For the reasons outlined above, the defendant's Motion *in Limine* to Exclude Evidence of Deaths should be denied.

New Orleans, Louisiana, this 29th day of January, 2016.

Respectfully submitted,

JENNIFER L. SAULINO
Director, Deepwater Horizon Task Force


 /s/ Jennifer L. Saulino
JENNIFER L. SAULINO, [Member of DC Bar]
Director, Deepwater Horizon Task Force
GARY A. WINTERS, [Member of DC Bar]
WILFREDO FERNANDEZ, [Member of FL Bar]
SANGITA K. RAO, [Member of IL Bar]
400 Poydras Street, Suite 1000
New Orleans, Louisiana 70130
Phone: (202) 445-9674

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

    /s/ Jennifer L. Saulino
JENNIFER L. SAULINO, [Member of DC Bar]
Director, Deepwater Horizon Task Force